IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN WILHELMS,

    **Plaintiff,**

    v.                                                    CASE NO. 23-3033-JWL

MONTGOMERY COUNTY JAIL,
et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff filed this action in the United States District Court for the Eastern District of North Carolina. This matter was transferred to this Court on February 8, 2023. (Doc. 4.) Plaintiff alleges that his claims arose during his pretrial detention at the Montgomery County Jail in Independence, Kansas ("MCJ"). On February 9, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 7) ("MOSC"), granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed or to file an amended complaint to cure the deficiencies set forth in the MOSC. The Court screened Plaintiff's Amended Complaint (Doc. 8), and entered a Memorandum and Order (Doc. 9) finding that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the MCJ. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the appropriate officials of the MCJ to prepare and file a *Martinez* Report.

The Court's Memorandum and Order provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." The *Martinez* Report

1

(Doc. 13) (the "Report") has now been filed. The Court will screen Plaintiff's Amended Complaint in light of the Report. The Court's screening standards are set forth in the MOSC.

The Court finds that Plaintiff is required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

## I. Nature of the Matter before the Court

Plaintiff alleges that on October 25 or 26, 2020, he sought medical attention for a broken thumb while detained at the MCJ. (Doc. 8, at 3.) Plaintiff alleges that he was in excruciating pain and was put in a cell for 18 or 36 hours without medical attention before going to the Emergency Room. *Id*. Plaintiff also had a laceration on his head. *Id*. Plaintiff alleges that the guard that took him to the hospital was mortified, recognized Plaintiff's issues, and could not understand why Plaintiff did not go to the hospital sooner or why Plaintiff was not given any help. *Id*.

Plaintiff alleges that around 10 or 11 am, he notified Officer Harman, and an unknown guard, of Plaintiff's injuries. *Id*. at 4. Plaintiff alleges that his thumb was "bent back to [his] wrist and upside down." *Id*. Plaintiff put in a request for a nurse and received nothing. *Id*. The guards told Plaintiff they notified the nurse. *Id*. Plaintiff was placed on lockdown later that day. *Id*. When Plaintiff asked to go to the hospital, he was told that they did not have to get him any medical attention, that the injury was his fault, and "that is what [you] get when you['re] in jail and fight." *Id*. at 4, 7. Plaintiff alleges that he did not receive medical attention until October 26th or 27th at around 10 to 12 pm. *Id*. at 4. Miss House and a guard took Plaintiff to the hospital. *Id*. They were transporting another female inmate to the hospital so they decided to take Plaintiff too. *Id*. The female inmate had to put Plaintiff's seatbelt on for him. *Id*.

Plaintiff alleges that he had another inmate call Plaintiff's mother, and when she called the jail, she was told that nothing had happened to Plaintiff and he did not need any medical care. *Id*. at 5.  Guards told Plaintiff that it was not their job to help him, and they only needed to tell the nurse, which they claim they did. *Id*. at 8.  Plaintiff claims the corrections officers would not even get him an icepack or ibuprofen. *Id*.

Plaintiff names the Montgomery County Sheriff's Department Corrections Officers as defendants.  Plaintiff seeks $300,000 in compensatory damages and "the cost of surgery on [his] hand." *Id*. at 10.

The Report provides in relevant part that:

> In the incident at issue, Plaintiff approached Officer Harmon (Harmon) on October 26, 2020, repeatedly telling Harmon he was injured after falling in the shower. (Exhibit 4). Plaintiff exhibited a thumb injury, two black eyes, and a "pussed up" knot above his right eye. (Exhibit 4). It was determined that Plaintiff had been in a fight with another inmate at about 10:35 a.m. on October 26, 2020, that lasted about 40 seconds. (Exhibit 4).
> Plaintiff later again approached Harmon to ask about seeing the jail nurse and was told to request a visit pursuant to jail protocol for medical visits. (Exhibit 4).
> That afternoon at 2:25 p.m., Plaintiff submitted an inmate medical request by way of the jail electronic system with the subject identified as "finger". (Exhibit 5).
> Plaintiff was seen in less than two hours by the jail nurse following his request. (Exhibit 6). Plaintiff again stated that he slipped and fell in the shower. (*Id*). The nurse recommended a treatment plan including ice packs, pain management medications, activity restrictions, and rest. (*Id*). The nurse electronically signed her notes at 3:57 p.m. on October 26, 2020. (*Id*).
> Plaintiff not only received a medical assessment at the jail but was also transported shortly thereafter to the Labette Health emergency room where he was seen at 6:18 p.m. on October 26, 2020. (Exhibit 7). Plaintiff was diagnosed with a dislocated, not broken, right thumb and a head contusion. (*Id*). Labette Health prescribed pain medication and released Plaintiff medically to return to the MCJ that night. (*Id*).

(Doc. 13, at 3–4) (internal paragraph numbers omitted).

## II. DISCUSSION

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies). To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Id.* at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 990 (citation omitted). The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).

4

Plaintiff has failed to show deliberate indifference to his medical needs. The Report shows that Plaintiff submitted his medical request at 2:25 p.m.; was seen by the jail nurse within 90 minutes; and was transported to the hospital and seen in the emergency room at 6:18 p.m. that same day. Plaintiff's thumb was dislocated, not broken, and he received medication and was released from the hospital that night.

The Court is considering dismissal of this matter for failure to state claim. Plaintiff has failed to show that an official acted with deliberate indifference to his medical needs. Plaintiff should show good cause why this matter should not be dismissed for the reasons stated in this Memorandum and Order to Show Cause. Failure to respond by the deadline may result in dismiss of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 15, 2023,** in which to show good cause, in writing to the undersigned, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED.**

**Dated April 17, 2023, in Kansas City, Kansas.**

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
UNITED STATES DISTRICT JUDGE